UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTONIO SZALA,

                Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF
TRANSPORTATION and LEON
HEYWARD, *Deputy Commissioner
Sidewalk Inspection Management*,

                Defendants.

23-CV-7778 (NRM) (CHK)

**MEMORANDUM AND ORDER**

**NINA R. MORRISON**, United States District Judge:

      Plaintiff Antonio Szala, proceeding *pro se*, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging discrimination, hostile work environment, and retaliation. He also brings a First Amendment retaliation claim under the U.S. Constitution, U.S. Const. amend. I, and claims of discrimination, hostile work environment, and retaliation under New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and New York City Human Rights Law ("NYCHRL"). N.Y.C. Admin. Code § 8-101 *et seq*. Plaintiff's claims revolve around Defendant New York City Department of Transportation's ("DOT") alleged discrimination and hostile treatment of him based on his Guyanese national origin and alleged retaliation against him for filing complaints about the DOT. Defendants have moved to dismiss the complaint in its entirety.

1

For the reasons below, the Court GRANTS Defendants' motion to dismiss as to Plaintiff's federal claims and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL BACKGROUND

Plaintiff's Amended Complaint asserts the following facts, which the Court must accept as true for purposes of Defendants' motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff began his employment with the DOT as an Apprentice Inspector in the Division of Sidewalk Inspection and Management in January 2020. Amended Compl. ("Am. Compl.") ¶ 1, ECF No. 23 (July 12, 2024). Plaintiff is of Guyanese national origin. *Id*. ¶ 2. After Plaintiff requested proper training, he overheard his supervisors remark, in sum and substance, that "all these Guyanese are like this" when he was leaving the meeting. *Id*. ¶ 7. Plaintiff alleges that he has been involuntarily transferred to multiple locations and placed under the supervision of many different advisors following his various complaints to his employer's Equal Employment Opportunity office ("EEO") and the federal Equal Employment Opportunity Commission ("EEOC") about the daily harassment he experienced and the lack of training he received. *Id*. ¶¶ 4, 9, 13. In addition, the daily inspection reports submitted by Plaintiff were altered or deleted, and his supervisors falsely claimed that the reports were incorrect or incomplete. *Id*. ¶ 11. Plaintiff also alleges that he received inadequate training, suffered a decrease in work hours, received multiple disciplinary write-ups, overheard derogatory comments regarding his

national origin, and experienced disparate treatment relative to his non-Guyanese colleagues. *Id*. ¶ 5.

## PROCEDURAL BACKGROUND

Plaintiff initiated this action on October 17, 2023. Compl., ECF No. 1. He filed his Amended Complaint on July 12, 2024. Am. Compl. Defendants moved to dismiss the action on September 12, 2024. Mot. to Dismiss, ECF No. 24; *see also* Def. Mem. in Supp. of Mot. to Dismiss, ECF No. 24-1; Pl. Mem. in Opp'n to Mot. to Dismiss, ECF No. 25; Def. Reply in Supp. of Mot. to Dismiss, ECF No. 26.

The Court concluded that review of the earlier charges and Notice of Right to Sue letters mentioned in Plaintiff's Amended Complaint[1] may be necessary for a full review of Defendant's Motion to Dismiss and directed the parties to file these additional documents. Dkt. Order dated Sep. 24, 2025.

The additional documents provided by the parties establish that Plaintiff filed his first charge of discrimination with the New York State Division of Human Rights ("DHR") and the EEOC on July 6, 2021. Charge of Discrimination ("First Charge"), ECF No. 30 at 2–5.[2] He received the corresponding Notice of Right to Sue Letter on January 13, 2022. Dismissal and Notice of Rights ("First Right to Sue Letter"), ECF

---

[1] In Plaintiff's Amended Complaint, he attaches an EEOC Notice of Right to Sue letter dated August 8, 2023. Determination and Notice of Rights ("Operative Right to Sue Letter"), ECF No. 23 at 16–19. Plaintiff also alleges that he filed charges with the EEOC or his EEO counselor on July 6, 2021, and July 28, 2022, and that he received additional EEOC Notice of Right to Sue letters dated January 13, 2024, and March 23, 2023. Am. Compl. at 6.

[2] All page references use ECF pagination except where noted.

3

No. 30 at 6–7. Plaintiff filed his second charge of discrimination with the DHR and the EEOC on May 25, 2022. Charge of Discrimination ("Second Charge"), ECF No. 30 at 9–15. He received the corresponding Notice of Right to Sue Letter on March 23, 2023. Determination and Notice of Rights ("Second Right to Sue Letter"), ECF No. 30 at 16. Plaintiff, who filed his initial Complaint on October 17, 2023, did not commence action in federal court within ninety days from the issuance of the first two Right to Sue Letters.

Plaintiff filed his third charge of discrimination with the EEOC on July 28, 2022. Charge of Discrimination ("Operative Charge"), ECF No. 31 at 2–4. He received the corresponding Notice of Right to Sue Letter on August 8, 2023. Operative Right to Sue Letter at 16. Plaintiff commenced action in this Court within ninety days from the issuance of the third Operative Right to Sue Letter.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Courts "must construe [a complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). However,

4

courts must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'" *Id.* at 107 (quoting *Twombly*, 550 U.S. at 555).

Because Plaintiff is proceeding *pro se*, the Court must "liberally" construe his submissions and interpret them "to raise the strongest arguments that [they] suggest[]." *Peralta v. New York City Dep't of Educ.*, No. 21-CV-6833 (EK) (LB), 2023 WL 6201507, at *3 (E.D.N.Y. Sep. 22, 2023) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases). However, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' even for a *pro se* plaintiff." *Peralta*, 2023 WL 6201507 at *3 (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## DISCUSSION

For the reasons discussed below, Plaintiff's Title VII claims are time-barred, and Plaintiff has failed to state a First Amendment retaliation claim. Because the Court grants Defendant's motion to dismiss all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction on his state law claims of discrimination, hostile work environment, and retaliation under NYSHRL and NYCHRL.

### I. Plaintiff's Title VII claims are time-barred.

Plaintiff's Title VII claims of discrimination, hostile work environment, and retaliation are time-barred because he did not commence action in federal court within ninety days from the issuance of the First or Second Right to Sue Letter, which were based on the same operative facts as his third Operative Right to Sue Letter.

5

"Title VII requires that a plaintiff file a complaint in a United States District Court within ninety days of receiving a right-to-sue letter from the EEOC." *Allen v. City of New York*, No. 18-CV-9663 (JGK), 2019 WL 5450874, at *5 (S.D.N.Y. Oct. 23, 2019) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) and 42 U.S.C. § 2000e-5(f)(1)). "When a plaintiff receives multiple right-to-sue letters from the EEOC, the plaintiff has ninety days from the issuance of the first right-to-sue letter to commence the action in federal court if the letters are based upon the same underlying facts." *Id.* (citation omitted). "Otherwise, the time limitations of 42 U.S.C. § 2000e–5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased." *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (citations omitted).

Plaintiff received his first EEOC determination on January 13, 2022. *See* First Right to Sue Letter at 6. He received the second EEOC determination on March 23, 2023. *See* Second Right to Sue Letter at 16. However, Plaintiff did not commence the action in federal court until October 17, 2023. *See* Compl. A closer examination of the allegations that Plaintiff made in the three Charges of Discrimination reveals that the various Right to Sue Letters are based upon the same underlying facts. All three Charges allege that Plaintiff experienced discrimination based on his Guyanese national original and faced retaliation for filing complaints with the DOT EEO and the EEOC, and all three Charges allege that he experienced a hostile work environment. *See generally* First Charge; Second Charge; Operative Charge.

6

Significantly, the only factual allegations in the Amended Complaint that might support an inference of national origin discrimination occurred prior to the First Charge. Am. Compl. ¶ 7 ("On or about *March 10, 2020*, as I was leaving a meeting with Mr. Reyes and Mr. Rashad where I requested proper training. I overheard Mr. Reyes comment to Mr. Rashad, in sum and substance, 'all these Guyanese are like this.'" (emphasis added)).

Moreover, the EEOC made identical determinations as to each of Plaintiff's Charges. *See* First Right to Sue Letter at 6 ("The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge."); Second Right to Sue Letter at 16 (same); Operative Right to Sue Letter at 16 (same).

Plaintiff also acknowledged in both subsequent Charges that they were based on the same alleged course of conduct. In the Second Charge, Plaintiff wrote:

> This situation *continued* after I filed a complaint against DOT NYC, that investigation was completed [on] 01/13/2022, Case# 520-2021-00660, I was giv[en] a letter with right to sue by the EEOC. Which I refused to after thinking I could've work[ed] things out with my management, and the situation came to a stop, but things just got more hostile.

Second Charge at 13 (emphasis added). In the Operative Charge, Plaintiff wrote:

7

> [O]n or around July 6, 2021, I submitted a Charge of Discrimination to the [EEOC]. On or around January 13, 2022, I was issued a Notice of Right to Sue. However, instead of suing, I tried unsuccessfully to resolve the issue internally. Since the 90 days connected to the receipt of my Notice of Right to Sue have passed, *my situation remain[s] unresolved and I have continued to experience ongoing discrimination and hostile retaliatory behaviors by my supervisors.*

Operative Charge at 2 (emphasis added).

These statements make clear that these latter Charges were based upon the same underlying facts, and Plaintiff only sought the Operative Right to Sue Letter because he believes he was unable to resolve internally the discrimination and retaliation that he alleges he experienced before he filed his First Charge. These statements also indicate that Plaintiff was aware of the 90-day statutory deadline to file a federal court action but elected not to do so. Moreover, both the Second Charge and the Operative Charge specifically refer to alleged retaliation that occurred after Plaintiff filed the First Charge and received the First Right to Sue Letter on January 13, 2022, underscoring the factual overlap between the Second and Operative Charges.

The conduct Plaintiff alleged in the third Operative Charge is reasonably related to the conduct alleged in both the First and Second Charges. Because Plaintiff did not commence action in federal court within 90 days from the issuance of the Second Right to Sue Letter, and because the Operative Charge is based upon the same underlying facts as the First and Second Charges, his Title VII claims are time-barred. *See Allen*, 2019 WL 5450874, at *5 (holding that the time to sue must be measured from the first of multiple right-to-sue letters "if the letters are based upon

8

the same underlying facts"); *Soso Liang Lo*, 787 F.2d at 828 (explaining that this rule is necessary to preserve the time limitations mandated in 42 U.S.C. § 2000e–5(f)(1)); *cf. Dahbany-Miraglia v. Queensboro Cmty. Coll.*, No. 03-CV-8052 (SAS), 2004 WL 1192078, at *4, *6–7 (S.D.N.Y. May 27, 2004) (noting that *Soso Liang Lo* can be distinguished where charges are "distinct enough to warrant separate findings by the EEOC" and holding that a new charge may survive the 90-day time bar where it "allege[s] discrete acts of discrimination that cannot be considered reasonably related to the earlier charges"). Accordingly, this Court is constrained to dismiss Plaintiff's federal Title VII claims.

## II.   Plaintiff has failed to state a First Amendment retaliation claim.

Plaintiff's Complaint also asserts a retaliation claim under the First Amendment to the United States Constitution; he argues that the DOT unlawfully retaliated against him for making complaints and raising concerns about the lack of workplace training. *See* Am. Compl. ¶¶ 13–14, 25–26, 30, 42, 48. However, the workplace speech and alleged retaliation that Plaintiff cites in his Amended Complaint does not state a claim under the First Amendment.

The Second Circuit "ha[s] described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Where a plaintiff is a public employee, to establish a *prima facie* case of First Amendment retaliation, the plaintiff must show that "(1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection

9

between the protected speech and the adverse action." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 317–18 (E.D.N.Y. 2014) (citing *Scott v. Coughlin*, 344 F. 3d 282, 287 (2d Cir. 2003)).

"[I]n assessing the first prong of the retaliation test — whether a public employee's speech is protected — [courts] must consider 'two separate subquestions': (1) whether the employee 'spoke as a citizen rather than solely as an employee,' and (2) whether he spoke on 'a matter of public concern.'" *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82–83 (2d Cir. 2022) (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)).

With regards to the first subquestion, Plaintiff spoke solely as an employee when he made the statements at issue here. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "The objective inquiry into whether a public employee spoke 'pursuant to' his or her official duties is 'a practical one.'" *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 202 (2d Cir. 2010) (quoting *Garcetti*, 547 U.S. at 424). "[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Id.* at 203.

In this case, Plaintiff's speech concerned, *inter alia*, the lack of training he received, the alteration or deletion of his reports, the loss of overtime work, and the

10

lack of payment for his time serving on jury duty. *See, e.g.*, Am. Compl. ¶¶ 11–12, 15–16, 48. All of these are "part-and-parcel of his concerns about his ability to properly execute his duties" and directly related to the terms and conditions of his employment. *Weintraub*, 593 F.3d at 203 (finding that a public-school teacher was speaking as an employee when he complained to others and filed a formal grievance with his union representative about his supervisor's failure to discipline a child who threw a book at him); *see also Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012) (finding that a payroll clerk's speech to her superiors about pay discrepancies was unprotected because it was part of her job responsibilities).

Plaintiff's statements related only to his own official job duties and what he perceived as the unfair treatment he alone received on the job. This distinguishes his case from those in which plaintiffs speak as citizens and are entitled to First Amendment protection, because they are airing broader grievances that are "not in furtherance of the execution of one of [their] core duties." *Weintraub*, 593 F.3d at 203; *see also Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 414 (1979) (finding that a teacher's communication with her principal about the school's alleged racially discriminatory practices was constitutionally protected and emphasizing "that a public employee [does not forfeit] his protection against governmental abridgement of freedom of speech if he decides to express his views privately rather than publicly"); *Matthews*, 779 F.3d at 174 (finding that an NYPD police officer spoke as a citizen when he reported the existence of a quota system in his precinct, because [s]uch policy-oriented speech was neither part of his job description nor part of the

11

practical reality of his everyday work"); *Dillon v. Suffolk Cnty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 210 (E.D.N.Y. 2013) (distinguishing *Weintraub* and finding that the plaintiff, a physician, spoke as a citizen when her "complaints referred to systemic mistreatment and corruption extending outside of her own personal duties and affecting inmates with whom she had no personal or job connection").

With regards to the second subquestion, Plaintiff does not make a colorable allegation that any of his individual complaints might "be fairly considered as relating to any matter of political, social, or other concern to the community." *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). In *Jackler*, by contrast, the Court found that "police malfeasance consisting of the use of excessive force is plainly a matter of public concern" because it implicates "public safety and welfare — as well as preservation of the public fisc." *Id.* at 236–37; *cf.*, 461 U.S. at 148 & n.8 (finding that an assistant district attorney's questionnaire surveying fellow staff members about the office transfer policy, office morale, and other employment-related questions did not implicate matters of public concern, while contrasting it with the plaintiff in *Givhan* who "protest[ed] racial discrimination — a matter inherently of public concern"); *Shara*, 46 F.4th at 88 (finding that a bus driver's arguments with fellow school district personnel "concerning the frequency of bus safety reports does not rise to the level of speech involving a matter of public concern [because it] concerned an internal work dispute over paperwork that would not be of interest to the public"). For, as the Second Circuit has instructed, "speech does not involve a matter of public concern when it

12

'principally focuses on' the speaker's personal issues or speech 'that is calculated to redress personal grievances,' even if it also incidentally 'touch[es] on a matter of general importance.'" *Id.* at 85 (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 399–400 (2d Cir. 2018)). Here, Plaintiff has not pleaded that he spoke on a matter of public concern when he submitted his complaints to the DOT.

Because the facts Plaintiff has pleaded do not satisfy the first prong of the retaliation test and show that his speech was protected, his Amended Complaint fails to establish a *prima facie* case of First Amendment retaliation. *See, e.g.*, *Kalderon v. Finkelstein*, 495 F. App'x 103, 108 (2d Cir. 2012) (affirming district court's dismissal of *pro se* plaintiff's First Amendment claim because plaintiff "was acting pursuant to her official duties" (citation modified)); *Foy v. New York State Unified Ct. Sys.*, 740 F. Supp. 3d 136, 153 (E.D.N.Y. 2024), *appeal dismissed*, No. 24-2242, 2025 WL 2470039 (2d Cir. Mar. 12, 2025) (dismissing *pro se* plaintiff's First Amendment claim because plaintiff's speech "amounted to a discussion of personal grievances rather than protected speech" (citation modified)). Accordingly, Plaintiff's First Amendment retaliation claim must also be dismissed.

### III. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Plaintiff raises state law claims of discrimination, hostile work environment, and retaliation under NYSHRL and NYCHRL. *See* Am. Compl. at 4. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has indicated that "decisions of state law should be

13

avoided both as a matter of comity and to promote justice between the parties," and that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."). There is no reason to depart from that general rule here.

Thus, the Court will not exercise supplemental jurisdiction over Plaintiff's state law claims. *See, e.g.*, *Graves v. Goodnow Flow Ass'n, Inc.*, 746 F. App'x 45, 48 (2d Cir. 2018) (finding that, "[b]ecause there was no basis for federal subject matter jurisdiction, the district court properly declined to exercise supplemental jurisdiction over [*pro se* plaintiff's] state law claim"); *Corley v. Vance*, 365 F. Supp. 3d 407, 462–63 (S.D.N.Y. 2019) (declining to exercise supplemental jurisdiction over *pro se* plaintiff's state law claims after dismissing his constitutional claims), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020). Plaintiff's claims are dismissed without prejudice for Plaintiff to pursue those claims in state court.

/ / /

## CONCLUSION

For the reasons discussed above, the Court GRANTS Defendants' motion to dismiss with regard to all of Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction on Plaintiff's state law claims. The Clerk of Court is respectfully directed to enter judgment, mail a copy of the Memorandum and Order and the Judgment to *pro se* Plaintiff, and close this case.

SO ORDERED.

                                                                    */s/ Nina R. Morrison*
                                                                    NINA R. MORRISON
                                                                    United States District Judge

Dated:  November 12, 2025
        Brooklyn, New York